CALDWELL *v.* CALDWELL.

Opinion delivered January 8, 1923.

DIVORCE—CUSTODY OF CHILDREN—Under Acts 1921, No. 257, providing that, where the husband and wife are living apart, there shall be no preference as to the custody of the children, but that the welfare of the child must be considered first in determining the custody of such child, *held* that where parents were divorced, and the husband applied for an order giving him custody of their son, upon proof that the mother was of excellent character and in every way fitted to train the child morally, a decree that each parent have the child one-half of the time until he becomes six years of age, at which time the mother shall have custody of the child during the school term and the father during the vacation period, will not be disturbed on appeal.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

STATEMENT OF FACTS.

Charles E. Caldwell prosecutes this appeal to reverse a decree awarding the custody of their infant child to the mother, who had been divorced from him.

It appears from the record that on the 6th day of January, 1921, the Pulaski Chancery Court granted a decree of divorce to Lois H. Caldwell in a suit wherein she was the plaintiff and Charles E. Caldwell was the defendant. It was decreed that the custody of their infant child should be divided between the husband and wife, each having the custody for two months at a time until the child should become six years of age. The decree further provides that if the parties fail to agree at that time as to which of them shall have the custody of the

child during the school term, the matter of his custody shall be again submitted to the court.

On January 13, 1922, Charles E. Caldwell filed his petition in the Pulaski Chancery Court in which he stated that their said child would soon be of school age, and asked that the custody of the child be awarded to him during the school term of each year.

The father resides in the town of Searcy, Ark., with his mother. The mother of the child married again in the first part of January, 1922, and resides with her husband in the city of Little Rock. Both parties are of good moral character, and wish the custody of the child.

According to the testimony of Charles E. Caldwell, he resides with his mother in Searcy, Ark., close to the public school. They have excellent public schools there. The witness is engaged in selling and repairing typewriters, and earns about $85 on an average per month. He has not remarried, and lives with his mother. His mother has no other child, and has property which brings her in an income of about $100 per month. She has a good home, and is devoted to her son and grandson. The mother of Charles E. Caldwell in every respect corroborated the testimony of her son, and said that she loved him and his child devotedly. She wished her son to have the custody of his child, and promised to help rear him. Charles E. Caldwell is 27 years of age, and his mother is 50.

Other witnesses who live in Searcy testified that Charles E. Caldwell and his wife resided there before they were divorced. They said that while she was away from home the mother of Charles E. Caldwell took care of her grandson, and seemed very devoted to him. They knew Mrs. Caldwell, the grandmother of the child, and the mother of the child quite well. They expressed the opinion that it would be better for the child's interest to live with his grandmother.

The mother of the child married F. R. Michell on January 7, 1922, and they lived at his home in Little

Rock, Ark. Her husband works in his father's office in the Fair Store Corporation, and earns $125 per month. She works in the same store as a stenographer, and earns $75 per month. While the witness is working she leaves her little son with her mother or with her married sister. It is her purpose to send her son to school as soon as he is old enough. Her husband has stock in the Fair Store Corporation, and his dividends amount to between $500 and $1,000 per year. The husband corroborated the testimony of his wife, and wanted her to have the custody of the child.

Other witnesses testified that the mother of the child was of excellent character and in every way fitted to train him morally. The above is the substance of the testimony introduced before the chancellor.

It was decreed that the father and the mother should each have the child one-half of the time until he became six years of age. At that time the decree provides that the mother shall have the custody of the child during the school term and the father during the vacation period.

To reverse this decree the father has duly prosecuted an appeal to this court.

*John E. Miller, C. E. Yingling* and *Brundidge & Neelly,* for appellant.

The procedure adopted by appellant to obtain the custody of his child has been approved in the following cases: 95 Ark. 355; 118 Ark. 582; 124 Ark. 579. The decree was final and appealable. 124 Ark. 579. The father is generally preferred over all others if he be of good moral character and able financially to support the child. Sec. 4991, C. & M. Dig.; 37 Ark. 27; 82 Ark. 461; 95 Ark. 355; 32 Ark. 96; 21 Enc. Law, 1036-37. The best interests of the child are to be considered in awarding its custody. 78 Ark. 93; 117 Ark. 90; 80 Ark. 287; 89 Ark. 501. See also 20 R. C. L. p. 601, sec. 15. The appellant offers every inducement for the wellbeing of the child in the way of home, schooling and parental care.

*J. H. Carmichael,* for appellee.

There was no appeal by appellant from the original decree, nor has he shown a change in circumstances of the appellee which would warrant a change in the custody of the child. See 124 Ark. 579; *Jackson* v. *Jackson,* 151 Ark. 9. The cases cited by appellant were before the passage of act 257 of the Acts of 1921. The best interest of the child would be served by allowing the mother to keep it. The child has not yet arrived at the age contemplated in the decree when a further order as to its custody might become necessary, and is still in need of that mother's care and control which the court found was necessary in 64 Ark. 518. See also 118 Ark. 591.

HART, J., (after stating the facts). The Legislature of 1921 passed an act providing, where the husband and wife are living apart, that there shall be no preference between them as to the custody of their children, but that in each case the welfare of the child must be considered first in determining the custody of such child.

Under this statute the chancellor must keep in view primarily the welfare of the child, and, in case of divorce or separation of the father and mother, will confide its custody to the parent most suitable therefor, as the right of each to its custody is of equal dignity. *Jackson* v. *Jackson,* 151 Ark. 9.

It follows that the father has no preferential right to the custody, as contended for by his counsel. In the instant case both the father and mother are of good moral character and love the child. The child is not yet six years of age, and is at that tender age where he requires the attention which a mother can better bestow upon him. In cases like this the custody of the child is not awarded for the purpose of gratifying the feelings of either parent or with any idea of punishing or rewarding either parent. The fitness of the respective parties of this suit to care for the child is not challenged.

It is urged that the grandmother loves the child, and is better able to care for him because she is not en-

gaged in any work which takes her from home, while, on the other hand, the mother of the child is engaged at work and is away from home during the day. In answer to this it may be said that the child will soon be of school age and will be at school during most of the day. Besides this, while she is at work he will be looked after by the sister of his mother, or his grandmother on his mother's side; and the mother stated that she would quit work, if necessary, to look after her child. If she should neglect the child, or if her condition or situation in life should be changed so as to make it to the best interest of the child, his custody could at any time be transferred to his father.

Therefore, considering all the surrounding circumstances, it cannot be said that the finding of the chancellor on the facts and his award of the custody of the child is against the preponderance of the evidence and should be disturbed on appeal.

Therefore the decree will be affirmed.