HAMILTON *v.* ANDERSON.

Opinion delivered January 30, 1928.

1. DIVORCE—FOREIGN DIVORCE—CHANGE OF CUSTODY OF CHILDREN.— Where parents and children are within this State, the chancery court, upon a proper showing of changed conditions, may change the direction of the court of another State, made at the time a divorce was granted, concerning the custody of the children.

2. DIVORCE—CHANGE OF CUSTODY OF CHILDREN.—Upon a proper and sufficient showing that a change in the direction of a decree, made at the time of the divorce, awarding the custody of children, for the best interest of the children, the chancery court may order the change.

3. DIVORCE—CUSTODY OF CHILDREN.—Conditions *held* to justify an order changing the custody of children and awarding custody to the mother instead of the father, notwithstanding it is under a disposition by a foreign decree of divorce.

Appeal from Lawrence Chancery Court, Eastern District; *A. S. Irby,* Chancellor; reversed.

*H. L. Ponder, Smith & Blackford* and *Caraway, Baker & Gautney,* for appellant.

*E. H. Tharp* and *Mahony, Yocum & Saye,* for appellee.

SMITH, J. Appellee, Joseph Max Anderson, was married to appellant, Jewell De Arman, in 1918, and to that union two children were born, Maxine and Nanette, now eight and six years old, respectively. They were married in North Carolina, and later moved to Alabama, where, on January 1, 1925, the wife brought suit for divorce, which terminated in a decree in her favor. This decree provided that each parent should have the custody of one child for the period of a year, after which the custody of the children should be changed, and each

parent then have for the period of a year the custody of the child which the other parent had had for the previous year.

The decree relating to the custody of the children was rendered by the consent of the parties. In February, 1926, this decree was modified by consent of the parties, and it was there ordered that the mother should have the custody of both children until July 1, 1927, after which time the father should have the custody of both children until July 1, 1928, and thereafter the custody should alternate and be changed on the first day of July of each year, so that the children should be kept together by first one parent and then the other for the period of a year.

Prior to the separation which preceded and led to the suit for divorce, appellee was employed at a mill where George C. Hamilton was employed as a foreman. Hamilton at that time was a married man, but he and his wife separated, and he obtained a divorce from her in September, 1924. Hamilton and appellant were married a few months after the rendition of the last decree by the Alabama court, and, after a short residence in Alabama, they moved to Louisiana, but, in March, 1927, they moved to Walnut Ridge, where they have since lived and are now residing. This was the original home of appellant, where her father and mother have long resided and now live. Appellee also returned to this State, and is now residing in Little Rock.

On March 23, 1927, appellant filed this suit in the chancery court of Lawrence County, and prayed that court to make an order awarding to her the permanent custody of both children. The court declined to make this order, and the decree of the Alabama court was left in full force and effect, and this appeal is from the decree of the Lawrence Chancery Court refusing to change the custody of the children as prayed.

The jurisdiction of the Lawrence Chancery Court is conceded, and we think there is no question about the jurisdiction of the Arkansas court to change the direction

of the Alabama court as to the custody of the children, upon a proper showing.

In the case of *Kenner* v. *Kenner,* 139 Tenn. 211, 201 S. W. 779, L. R. A. 1918E 587, the Supreme Court of Tennessee said:

"We are of the opinion that, as between the parents, parties to the litigation, the decree of the foreign court awarding the custody of the children is *res judicata,* subject, as between these parties, to modification only by the court that granted the decree. (Citing cases). However, we think this doctrine should be understood with the qualification that, in case of the removal of the child to another State, even within the custody of the parent to whom that custody had been awarded by the foreign decree of divorce, the courts of the State to which the removal has been effected will have the power, on a change of circumstances showing such course essential to the best interests of the child, to make a new disposition of the child. (Citing cases)." See also cases cited in the note to the text, chapter "Divorce," 19 C. J. 366, quoting from this Tennessee case.

The courts of this State have therefore the jurisdiction to order a change of custody of the children upon a proper and sufficient showing that such a change should be made, and prior decisions of this court have announced the conditions under which that jurisdiction should be exercised.

In the case of *Weatherton* v. *Taylor,* 124 Ark. 579, 187 S. W. 450, it was said:

"The following statement of the law on the subject is found in 9 Ruling Case Law, page 476: 'A decree made at the time of the divorce cannot anticipate the changes which may occur in the condition of the parents, or in their habits and character, and their fitness to have the custody and care of the children. The parent having the custody of the children may marry; may become poor and unable properly to maintain and educate them; may become vicious and morally unfit to have the control of children. These changes, and other sufficient causes, may

make it necessary for the good of the children that their custody should be changed. * * * Moreover, a delinquent parent may, in the course of time, become entirely fit to have and retain the custody of his or her child. And so it has been held that the presumption of unfitness on the part of a father for the custody of his child, raised by refusal of the court to award it to him upon granting a decree of divorce against him, is overcome by evidence of an exemplary life for many months after the passing of the decree. A decree fixing the custody of a child is, however, final on the conditions then existing, and should not be changed afterward unless on altered conditions since the decree, or on material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the child'."

The later cases of *Jackson* v. *Jackson*, 151 Ark. 9, 235 S. W. 47; *Stone* v. *Crofton*, 156 Ark. 323, 245 S. W. 827, and *Caldwell* v. *Caldwell*, 156 Ark. 383, 246 S. W. 492, recognized the right of the court to change the custody of children where changed conditions make it advisable and for the best interests of the child or children to do so, although the original decree awarding the custody is a final decree from which an appeal might have been prosecuted. These cases are also authority for holding that, in determining whether there have been changed conditions, the court, as was said in the case of *Caldwell* v. *Caldwell, supra,* "must keep in view primarily the welfare of the child," and that "the custody of the child is not awarded for the purpose of gratifying the feelings of either parent or with any idea of punishing or rewarding either parent."

Neither party to this litigation questions the fitness of the other to have the custody of the children, but appellee insists that no change in the circumstances has been shown which will justify a modification of the amended decree of the Alabama court, which, as we have said, awarded the custody of both children to first one parent and then the other, each for the period of a year.

We think, however, that the testimony does show such conditions as warrants a change of custody. At the time of the rendition of the Alabama decree neither parent had a home to which the children could be taken, and the father has none yet. It is true that he clearly shows his devotion to the children and his willingness and ability to provide for them, but he has remained unmarried and has established no home of his own. He shows that his father and his stepmother have a home in which the children can be properly taken care of, and that he can and will provide a home in which some suitable person will be employed to minister to the children, if necessary. But the mother has now a permanent home, and she is anxious to have the custody of the children, and has given every assurance that the children will, if delivered to her, receive the attentions which their tender ages require. The mother has been a teacher, not only of the common school studies, but of music as well, and it is not questioned that the children will, if placed in her care, have the proper environment and the best advantages.

The elder child was called as a witness at the trial below, and stated that she and her sister were living with appellee's father, both slept in the same room with her grandfather and grandmother, and with "Uncle Bruce," and that, when appellee visited them, he slept with "Uncle Bruce," and all in the same room, and she stated that she would like to stay with her mother all the time.

We cannot be unmindful of the fact that, because of their tender age, the children require the constant attention which only a mother's love can give, and for this reason, principally, we think their custody should be awarded to her.

Section 3 of act 257, Acts 1921 (General Acts 1921, page 317) is as follows:

"Where the husband and wife are living apart, there may be an adjudication of the court as to their power, rights and duties with respect to the persons and property of their unmarried minor children. In such cases

there should be no preference between the husband and wife, but the welfare of the child must be considered first in determining the custody of such child, or the control of its property   *   *   *."

This statute has been construed in the cases cited as requiring the courts, in awarding custody of children, to regard, as was said in the case of *Stone* v. *Crofton, supra,* the welfare of the child as "of first importance," and, in the discharge of this duty, we have concluded that the custody of these children should be awarded to their mother, at least during the period of their tender adolescence.

The decree of the court below will therefore be reversed, and the cause remanded, with directions to the court below to award the custody of both children to appellant, reserving to appellee, the father, the right to visit them at any reasonable time and to give him, if he so desires, the right to have them with him during their school vacation periods.

HART, C. J., dissents.

KIRBY, J., disqualified and nonparticipating.