## Tucker *v.* Turner.

4-4942

Opinion delivered February 14, 1938.

*J. H. A. Baker* and *Dick Jones,* for appellant.

*Bob Bailey, Reece Caudle* and *Robt. J. White,* for appellees.

McHaney, J. Appellant, a resident of Oklahoma, filed his petition below for a writ of *habeas corpus* to recover the possession of his infant daughter, in which he alleged that he is the father of said child, Sue Elizabeth Tucker, and entitled to her care and custody under and by virtue of a decree of the district court of Okfuskee county, Oklahoma, of June 9, 1937,—another *habeas corpus* proceeding involving the same child and between the same parties; that under said decree he was given the custody of said minor from September to May, both inclusive, of each year, and that the appellee, Sue Elizabeth Turner, was given the custody of said minor for the other three months; that upon the rendition of said decree, which, as alleged, was by consent, said appellee took possession of said minor and brought her to Dover, Pope county, Arkansas, where she has since remained in the custody of said appellee; and that when he came to Dover to retake said child under the authority of said decree, said appellee refused to surrender said child to him. A certified copy of said decree was attached as an exhibit to the petition.

Appellees responded to said petition in which they alleged that Mrs. Turner is the grandmother, and Mrs.

West is the aunt of said child; that the mother of said child, Mrs. Lamont Turner Tucker, died on the 28th day of January, 1928, at which time said child was about three months old, and at which time these appellees were given the care and custody of said child by both her father and her mother; that it was the express wish of the mother of said child that these appellees have her care, custody and education, which was concurred in and adopted by appellant, both before and after the death of the mother; that from the time that said child was eleven days old until March 23, 1937, these appellees had the constant care and custody of said child, furnishing her food, clothing, medical attention, schooling and a home in which she received every care and attention and motherly love; that from the infancy of said child until the 23rd day of March, 1937, appellant was permitted to visit said child and was welcomed into their home; that appellant married again in June, 1930, and at no time since his remarriage, except once in a drunken condition, has he ever indicated a desire to take said child from these appellees, but later, when sober, stated that he had no intention of doing so; that during all this time, appellant has shown no attachment for said child, contributed very little to its maintenance and support and displayed no disposition or ability to discharge the duties of a father; that said child has been given advantages in one of the best rural high schools in the state, where she has regularly attended and also the advantages of church and Sunday School; that about nine o'clock in the morning of March 23, 1937, appellant and his wife visited appellees in Dover, and stated that they desired to take said child to Russellville, in the same county, to buy her some clothing and would return her to appellees at about six o'clock in the evening of the same day; that late in the afternoon of said day they learned that appellant and his wife had departed from Pope county, taking said child to Okemah, Oklahoma, where she was restrained of her liberty and unlawfully held against her wishes and against the wishes of these appellees, and against the best interests of said child until the 9th day

of June, 1937. The response then sets up alleged facts and circumstances under which the decree of the Oklahoma court, disposing of the custody of said child, was granted and alleged that it was procured by fraud. The response further alleged that on and prior to the abduction of said child by appellant and his wife, she was in a healthy, thriving and happy condition, but that upon her return to Dover, on the 9th day of June, 1937, she had not gained in weight, but was in a poor and emaciated condition which required several weeks for her to recover; that during this time, she has gained a number of pounds in weight, is healthy and happy and desires to live with these appellees and that it is to the best interest of said child to remain with them, who are proper persons to have her care, control and custody, owning their own home in Dover and being financially able and willing to rear and educate her; that appellant owns no property, has never assumed the responsibility of caring for said child and during the time he had custody of her, he failed to give her proper care and attention; that he is not a proper person to have the care and custody of said child and that it would be to her best interests to be permitted to remain with appellees. The prayer was for a dismissal of appellant's petition and that appellees be given the care, control and custody of said child.

Appellant demurred to the response of appellees on the ground that the court had no jurisdiction to inquire into any question except the jurisdiction of the circuit court of Okfuskee county, Oklahoma, the court which rendered the decree hereinabove mentioned.

The court heard evidence on the allegations of appellees that the Oklahoma decree was obtained by fraud, but found against appellees on this contention. The court overruled appellant's demurrer to the response of appellees and, upon his electing to stand upon his demurrer, the petition for the writ of *habeas corpus* was dismissed and also his motion for a decree awarding said child to him in accordance with the terms of the Oklahoma decree was denied.

Appellant's principal, if not his only contention for a reversal is, to use his own language: "That the court erred in not sustaining the full faith and credit clause of the Constitution of the United States, § IV, par. 1, by dismissing the petition for the writ of *habeas corpus* filed by appellant, and overruling his motion praying for a decree awarding said minor child to appellant under the original decree of the Okfuskee county, Oklahoma, district court rendered June 9, 1937." In other words, appellant contends that the only jurisdiction the Pope chancery court had was to determine the question of the jurisdiction of the Oklahoma court. We do not agree with appellant in this contention. Such is not the law with reference to the care and custody of infant children, and appellant has cited no case so holding. For the purpose of this opinion, we assume that the Oklahoma court had jurisdiction both of the parties and the subject matter and that its decree rendered on June 9, 1937, was valid and binding. Even so, it is not controlling of the questions here presented. Foreign judgments could have no greater force and effect than the judgments of the courts of this state, acting within their jurisdiction. The judgment of a chancery court in this state, awarding the custody of an infant child to one of the parents, or to any other person, is a final judgment, from which an appeal lies, but it is not *res judicata* in the same or another court of this state involving the custody of the same child, where it is shown that the conditions under which the former decree was made have changed and that the best interests of said child demand a reconsideration of said order or decree. If then, a former decree of a court of this state, involving the custody of a minor child, is not *res judicata* in a subsequent proceeding in the same or some other court of this state, how could it be said that a foreign judgment would be *res judicata?* R. C. L. lays down the general rule in Vol. 15, p. 940, § 417:

"A judgment of a court of one state awarding the custody of minor children in a divorce proceeding is not *res judicata* in a proceeding before a court of another

state, except as to facts and conditions before the court upon the rendition of the foreign decree. As to facts and conditions arising subsequently thereto, it has no controlling force, and the courts of other states are not bound thereby. Nor is a decree of a court of one state awarding the custody of a child binding upon the courts of another state under the full faith and credit clause of the federal constitution after the child had become domiciled in the latter state. Such a decree as to a child has no extraterritorial effect beyond the boundaries of the state where it is rendered, and the courts of the second state will not remand the child to the jurisdiction of another state, especially where it is against the true interests of the child. The reason for this rule is found in the fact that children are the wards of the court and the right of the state rises superior to.that of the parents. Therefore, when a child changes his domicil and becomes a citizen of a second state, he is no longer subject to the control of the courts of the first state.''

Our own case of *Hamilton* v. *Anderson,* 176 Ark. 76, 2 S. W. 2d 673, is authority directly to the contrary of appellant's contention, where many of our former cases and those of other states are reviewed. In that case, two minor children were involved and the father and mother were litigating about their care, custody and control. They were divorced in Alabama and there was a consent decree regarding the custody of the children, and later the decree was modified by consent of the parties by which each party was to have both children for a year, their yearly custody being alternated between them. The mother of these children later married a man by the name of Hamilton, and they, thereafter, moved to Arkansas, at Walnut Ridge, whereas, Mr. Anderson moved to Little Rock. She thereafter filed a suit in the chancery court of Lawrence county, praying an order awarding the permanent custody of both children, which was contrary to the decree of the Alabama court. The trial court refused to grant the relief prayed and on appeal to this court, the judgment was reversed with directions to award the relief prayed. We there. cited the

cases of *Jackson* v. *Jackson,* 151 Ark. 9, 235 S. W. 47; *Stone* v. *Crofton,* 156 Ark. 323, 245 S. W. 827, and *Caldwell* v. *Caldwell,* 156 Ark. 383, 246 S. W. 492, which cases "recognized the right of the court to change the custody of children where changed conditions make it advisable and for the best interests of the child or children to do so, although the original decree awarding the custody is a final decree from which an appeal might have been prosecuted. These cases are also authority for holding that, in determining whether there have been changed conditions, the court, as was said in the case of *Caldwell* v. *Caldwell, supra,* 'must keep in view primarily the welfare of the child,' and that 'the custody of the child is not awarded for the purpose of gratifying the feelings of either parent or with any idea of punishing or rewarding either parent'." The court then found that the testimony in that case showed such a change in conditions as warranted a change of the custody of the children and set out the testimony which showed the change. See, also, *Willis* v. *Bell,* 86 Ark. 473, 111 S. W. 808.

In this case, there is no testimony showing the changed conditions of the child in controversy, but the response of appellees which we have abstracted rather fully, is sufficient to show that there are changed conditions sufficient to justify the decree of the court in refusing appellant the custody of said child. Appellant demurred to this reponse and saw fit to stand upon his demurrer and we must accept the response as true, as the demurrer admits the allegations of the response. These allegations are to the effect that prior to her abduction on March 23, 1937, she was in a healthy, thriving and happy condition but, upon June 9, 1937, when she was returned to appellees, she was in a poor, emaciated and depraved condition, which required several weeks for her to recover; that she has now gained in weight and is in a healthy and happy frame of mind and desires to live with these appellees where she has lived practically all of her life; that appellees own their own home and are financially able to take care of said child, whereas appellant owns no property, has never assumed

the responsibility of caring for her and during the time he had custody of her, he failed to give her proper attention. We think these allegations are sufficient to show the changed conditions and to justify the decree of the court from which this appeal comes.

The infant child is a silent party to this litigation, and her interests and rights cannot be ignored. Infant children are regarded as the wards of the courts, and the good of the children is always the chief thing to be considered by the judge in determining their care and custody. It is not property, and, therefore, does not come within the rule of the full faith and credit clause of the Federal Constitution relating to foreign judgments.

We find no error, and the decree is accordingly affirmed.