SWAFFORD v. SWAFFORD.

5-654                                           278 S. W. 2d 639

Opinion delivered April 11, 1955.

[Rehearing denied May 16, 1955.]

*N. J. Henley,* for appellant.

*Merle Shouse,* for appellee.

ED. F. McFADDIN, Justice.    This appeal involves the custody of James Michael Swafford, the 7-year-old son of the appellant and appellee.    Mr. and Mrs. Swafford were married in 1946 and their son was born in 1947.    In 1951 the Chancery Court granted Mrs. Swafford a divorce and custody of the child.    In 1954, upon Mr. Swafford's petition, the Court modified the 1951 custody order so as to allow Mr. Swafford to have the child one week-end each month; and this appeal is from the said modification.

We have in our Reports many child custody cases, some of which are:    *Myers* v. *Myers,* 207 Ark. 169, 179 S. W. 2d 865; *Miller* v. *Miller,* 208 Ark. 1058, 189 S. W. 2d 371; *Thompson* v. *Thompson,* 213 Ark. 595, 212 S. W. 2d 8; and *Roberts* v. *Roberts,* 216 Ark. 453, 226 S. W. 2d

579. In *Thompson* v. *Thompson, supra,* Mr. Justice ROB-INS summarized our holdings:

"While any order as to custody of a child is subject to future modification by the court making it, the rule, uniformly adhered to by us, is that before such modification may be made it must be shown that, after the making of the original order, there has been such a change in the situation as to require, in the interest of the minor, the change to be made, or it must be shown that material facts affecting the welfare of the child were unknown to the court when the first order was made."

In the case at bar Mr. Swafford has failed to show any of the above mentioned matters. In 1951 Mr. and Mrs. Swafford were living in their home. He became enamored of another woman and compelled Mrs. Swafford to get a divorce.[1] Mr. Swafford took Mrs. Swafford and their child to Mrs. Swafford's parents, and the next day Mr. Swafford married the woman of whom he was enamored. He and his said wife (his fourth one) now live in the same home from which he drove the appellant. Mr. Swafford's business, income and habits are the same as they were in 1951 when he raised no objection to the appellant having the custody of the child. When Mrs. Swafford's attorney attempted to interrogate Mr. Swafford in regard to change in circumstances, Mr. Swafford's attorney said:

"I notice the plaintiff's attorney keeps referring to change of circumstances. There is no allegation of change of circumstances."

But even if there had been some sort of change of conditions shown—which we cannot find—nevertheless we are convinced that it would not be for the best interest of the child to modify the 1951 custody order. The appellant lives with her mother and father and every Sunday takes the boy to Sunday School where she is a teacher. The boy is in a good Christian home. Mr. Swafford does not offer any such environment: he does

---

[1] None of present counsel was in any wise connected with the 1951 decree.

not attend Church; he has a bad record for drinking intoxicants and also for the use of profanity, even in the presence of his son within the past year. This was on an occasion when Mr. Swafford was visiting the boy. Without detailing all of the evidence it is sufficient to say that it is for the best interest of the child that his custody remain with the mother.

Mr. Swafford has paid $10.00 per week for the boy's support; and that order is left in full force. Mr. Swafford has at all times had the right of reasonable visitation; and that order is left in effect. But we reverse so much of the decree as gave Mr. Swafford the custody of the boy or the right to have him on any week-end or other time.

Justices GEORGE ROSE SMITH, WARD and ROBINSON dissent.